[Cite as *Townhomes at French Creek Homeowners Assn., Inc. v. Woods*, 2018-Ohio-2445.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| TOWNHOMES AT FRENCH CREEK, etc. | C.A. No. 17CA011159 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHRISTOPHER G. WOODS | AVON LAKE MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellee | CASE No. CVI 1700068 |

DECISION AND JOURNAL ENTRY

Dated: June 25, 2018

---

SCHAFER, Presiding Judge.

{¶1} Appellant-Plaintiff, the Townhomes at French Creek Reserves Homeowners Association, Inc. ("HOA"), appeals the judgment of the Avon Lake Municipal Small Claims Court. For the reasons that follow, we reverse and remand.

I.

{¶2} The Townhomes of French Creek Reserve is a planned community. Pursuant to the community's amended declaration of restrictions, reservations, and covenants, each lot owner within the HOA is required to pay monthly maintenance fees for each owner's share of the common expenses. Defendant-Appellee, Christopher Woods, is a lot owner within the HOA. Woods opted to allow the HOA's property management company, Carlyle Management ("Carlyle"), to automatically withdraw the monthly maintenance fees from his checking account on the tenth of each month through the Automatic Clearing House ("ACH"). Woods was current with payment of his maintenance fee to the HOA until April 2015. On April 10, 2015, Carlyle

attempted to withdraw the $175 maintenance fee from Woods' checking account, however, the attempt was returned due to insufficient funds in the account. Subsequent to the failed withdrawal attempt, Carlyle sent monthly statements to Woods with his outstanding balance. However, Woods never responded and never paid his balance.

{¶3} The HOA subsequently filed a complaint in the Avon Lake Municipal Small Claims Court, seeking unpaid maintenance fees, assessments, and late fees due and owing to the HOA in the amount of $1,083.00, plus continuing maintenance fees, late fees, and legal fees in the amount of $325.00.

{¶4} A small claims hearing was held on May 17, 2017. The HOA appeared represented by counsel. Charles Shulman, president of Carlyle testified on behalf of the HOA. Although duly served, Woods did not appear at the hearing. Following the hearing, the trial court issued a judgment in favor of the HOA. However, the trial court determined that the HOA was not entitled to legal fees incurred due to Woods' delinquency and continued non-response and that the HOA's collection policy of monthly late fees on any unpaid balance was of no effect. Consequently, the trial court only awarded the HOA $215.00 for the single unpaid assessment, one late fee, and the returned check fee from April 2015.

{¶5} The HOA filed this timely appeal, raising two assignments of error for our review. Woods did not file a merit brief in this matter. Thus, we may accept the HOA's statements of the facts and issues as correct and reverse the judgment if its brief reasonably appears to sustain such action. App.R. 18(C). For ease of analysis, we elect to consider the assignments of error out of order.

II.

**Assignment of Error II**

**The trial court erred in finding [the HOA] was not entitled to recover monthly late fees on the unpaid balance due to [Woods'] delinquency.**

{¶6}    In its second assignment of error, the HOA contends that the trial court erred when it determined that it was not entitled to recover monthly late fees on the unpaid balance due to Woods' delinquency.    Specifically, the HOA argues that its "Rules and Regulations are permitted by the [HOA]'s Declaration and are enforceable."

{¶7}    In this case, the trial court made several findings of fact before determining that the HOA was "estopped from recovering * * * the additional late fees" and that "[a]n award for these charges would be patently unreasonable, unjust[,] and inequitable."    Specifically, the court found that Carlyle "controlled the amount that could be credited to them for HOA fees" and "[b]ecause of Carlyle's decision to not credit the April 2015 fees, the late fees accumulated * * * ."    However, in making its determination, the trial court made no mention of the HOA's declaration, bylaws, or rules and regulations nor did the trial court provide any legal support for its conclusion in its journal entry.

{¶8}    A "[p]lanned community" is defined as "a community comprised of individual lots for which a deed, common plan, or declaration requires any of the following:"

(1) That owners become members of an owners association that governs the community;

(2) That owners or the owners association holds or leases property or facilities for the benefit of the owners;

(3) That owners support by membership or fees, property or facilities for all owners to use.

R.C. 5312.01(M). "Planned communities," such as the Townhomes at French Creek Reserves, are governed by Chapter 5312 of the Ohio Revised Code. The General Assembly enacted Chapter 5312 in 2010 in order to establish a uniform framework for the operation and management of planned communities in Ohio and to supplement any planned community governing document in existence on the effective date of the statute. R.C. 5312.15. The provisions of R.C. 5312.01, et seq, control in circumstances where a governing document is silent. *Id.* However, "[i]n the event of a specific conflict between this chapter and express requirements or restrictions in such a governing document, the governing document shall control." *Id*.

{¶9} Pursuant to R.C. 5312.06(A)(2), an owners association, through its board of directors, is responsible for collecting assessments for the common expenses from the owners. A portion of the HOA's handbook of rules and information ("handbook") was admitted as evidence and states, under the heading "maintenance fees, lien procedures, cost of collection, cost of enforcement," that "[a]n administrative late charge of twenty-five dollars ($25.00) per month shall be incurred for any late payment and on any unpaid balance." The HOA contends on appeal that its recorded amended bylaws grant its Board the power to make and amend rules and regulations for the HOA. However, the recorded amended bylaws referenced by the HOA were not admitted into evidence below and are not a part of the record on appeal. Therefore, we are prohibited from considering them. *See* App.R. 9(A)(1); App.R. 12(A)(1)(b); *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus.

{¶10} Nonetheless, R.C. 5312.06(D)(11) specifically allows an owners association, through its board of directors, to "[a]dopt and amend rules that regulate the collection of delinquent assessments and the application of payments of delinquent assessments[.]" Thus,

even though this Court may not consider the HOA's recorded amended bylaws, the HOA's rules and regulations declaring that "[a]n administrative late charge of twenty-five dollars ($25.00) per month shall be incurred for any late payment and on any unpaid balance" is still permitted by statute.

**{¶11}** In making its determination that the HOA was not entitled to recover late fees, the trial court found that Carlyle "controlled the amount that could be credited to them for HOA fees" and that Woods' late fees accumulated "[b]ecause of Carlyle's decision to not credit the April 2015 fees[.]" However, R.C. 5312.11(B) states:

> Unless otherwise provided by the declaration, bylaws, or rules, the owners association shall credit any amount it receives from a lot owner * * * in the following order:
>
> (1) To interest owed to the owners association;
>
> (2) To administrative late fees or enforcement assessments owed to the owners association;
>
> (3) To collection costs, attorney's fees, and paralegal fees the owners association incurred in collecting the assessment;
>
> (4) To the oldest principal amounts the owner owes to the owners association for the common expenses chargeable against the dwelling unit or lot.

A copy of Woods' account, including credit and debits was admitted as evidence. A review of this account shows Carlyle complied with R.C. 5312.11(B) and credited his account in the statutorily provided order. Thus, since any money received from Woods was applied to the principal last, Woods' unpaid balance each month included principal amounts previously owed for maintenance.

**{¶12}** Moreover, we note that Mr. Shulman, president of Carlyle, testified that Woods opted to allow Carlyle, the HOA's property management company, to automatically withdraw the amount of the monthly maintenance fees from his checking account on the tenth of each

month through the Automated Clearing House. Woods was current with payment of his maintenance fee to the HOA until April 2015. On April 10, 2015, Carlyle attempted to withdraw the maintenance fee from Woods' checking account, however, the attempt was returned due to insufficient funds in the account. Mr. Shulman further testified that although Woods authorized Carlyle to continue to withdraw the monthly maintenance fee amount from his checking account through the Automated Clearing House, it did not have Woods' authorization to debit his account for his unpaid balance after the April 10, 2015 attempt was returned for insufficient funds. Indeed, a review of Woods' authorization agreement for automatic debit shows that Woods only authorized his "checking account to be debited for [his] maintenance fee * * * on the 10th of each month * * * [.]" Although Carlyle sent monthly statements to Woods with his outstanding balance, Woods never responded and never paid his balance.

{¶13} Therefore, we conclude that the trial court erred when it determined that the HOA was not entitled to recover monthly late fees on Woods' unpaid balance. Woods' unpaid balance at the time of the small claims hearing included a significant amount of principal owed to the HOA for the maintenance fees, Woods never authorized Carlyle to make any additional debits or otherwise pay his outstanding balance, and finally, the HOA's handbook provides that "[a]n administrative late charge of twenty-five dollars ($25.00) per month shall be incurred for any late payment and on any unpaid balance."

{¶14} The HOA's second assignment of error is sustained.

## Assignment of Error I

**The trial court erred in finding that the [HOA] was not entitled to recover any legal fees due to [Woods'] delinquency.**

{¶15} In its first assignment of error, the HOA contends that the trial court erred in finding that the HOA was not entitled to recover any legal fees due to Woods' delinquency. We agree.

{¶16} In this case, the trial court determined that "[n]one of the legal fees on the HOA account [were] merited for [Woods'] one delinquency" and that "[a]n award to the [HOA] for these charges under these circumstances would be patently unreasonable, unjust, and inequitable."

{¶17} Absent an abuse of discretion, this Court will not reverse a trial court's determination on attorney fees. *LEH Props. v. Pheasant Run Assn*, 9th Dist. Lorain No. 10CA009780, 2011-Ohio-516, ¶ 22. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary[,] or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219. Thus, "[a] trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by evidence, or grossly unsound." *Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶ 21.

{¶18} Generally, Ohio courts have "adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as part of the costs of litigation." *Wilborn v. Bank One Corp.,* 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 7, citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 33-34 (1987), and *State ex rel. Beebe v. Cowley*, 116 Ohio St. 377, 382 (1927). "However, there are exceptions to this rule. Attorney fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees." *Wilborn* at ¶ 7, citing *Nottingdale* at 34.

**{¶19}** In support of its assertion that it was entitled to attorney fees, the HOA points to its amended declaration of restrictions, reservations, and covenants, as well as R.C. 5312.11(A)(3) and R.C. 5312.12(A). As stated above, the provisions of R.C. 5312, et seq, control in circumstances where a governing document is silent. R.C. 5312.15. However, "[i]n the event of a specific conflict between this chapter and express requirements or restrictions in such a governing document, the governing document shall control." *Id.*

**{¶20}** In this case, only a small portion of the amended declaration, including Article IV, Sections 4.1 through 4.6 (pages 12-14) and an unidentified article, Section 7.16 (page 29), was admitted into evidence. Article IV, Section 4.1, states in relevant part, as follows:

> All annual and special assessments, together with interest thereon as hereinafter provided, shall be a charge upon such Living Unit and if not paid within thirty (30) days after their due date, the Association shall have a lien upon the living Unit for which such assessment has not been paid. Each such assessment, together with such interest thereon and costs of collection thereof as hereinafter provided, shall also be the personal obligation of the person who was the Owner of such property at the time when the assessment fell due.

R.C. 5312.11(A)(3) provides that planned community's owners association "may assess an individual lot for * * * [c]osts associated with the enforcement of the declaration or the rules and regulations of the owners association, *including but not limited to, attorney's fees, court costs and other expenses*." (Emphasis added.) R.C. 5312.12(A) states,

> The owners association has a lien upon the estate or interest in any lot for the payment of any assessment or charge levied in accordance with [R.C. 5312.11], *as well as any related interest, administrative late fees, enforcement assessments, collection costs, attorney's fees, and paralegal fees,* that are chargeable against the lot and that remain unpaid ten days after any portion has become due and payable.

(Emphasis added.)

**{¶21}** In this case, Mr. Shulman testified that Woods was a lot owner within the HOA. He stated that on April 10, 2015, Carlyle attempted to withdraw the maintenance fee from

Woods' checking account, however, the attempt was returned due to insufficient funds in the account. Mr. Shulman further testified that although Carlyle sent monthly statements to Woods with his outstanding balance, Woods never responded and never paid his balance.

{¶22} Therefore, pursuant to the amended declaration, Woods was personally responsible for the HOA's costs related to the collection of Woods' unpaid balance and the HOA was expressly entitled to attorney's fees related that collection. *See* R.C. 5312.11(A)(3) and R.C. 5312.12(A). Accordingly, we conclude that the trial court abused its discretion when it determined that the HOA was not entitled to attorney's fees in this matter. Consequently, we remand this matter to the trial court and instruct it to determine in the first instance whether the amount of attorney's fees sought by the HOA are fair, just, and reasonable after fully considering the circumstances in this case. *See Klein v. Moutz*, 118 Ohio St.3d 256, 2008-Ohio-2329, ¶ 13 ("The trial court is in a better position to determine a fee award, for it may hold a hearing, take testimony, create a record, and otherwise evaluate the numerous factors associated with calculating an attorney-fee award.").

{¶23} The HOA's first assignment of error is sustained.

### III.

{¶24} The HOA's first and second assignments of error are sustained. Therefore, the judgment of the Avon Municipal Small Claims Court is reversed and this matter is remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Avon Lake Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
JULIE A. SCHAFER
FOR THE COURT


TEODOSIO, J.
CONCURS.

HENSAL, J.
DISSENTING.

{¶25} I do not agree that the municipal court's damage award was incorrect. Carlyle's authorization agreements allowed a lot owner to "authorize your checking account to be debited for your maintenance fee[.]" Mr. Woods signed one of those agreements in September 2013. When his $175 payment for April 2015 failed, Carlyle added a late fee and returned-check fee to his account. The next month, instead of withdrawing the entire maintenance fee then owed by Mr. Woods, Carlyle withdrew only $175. Because Mr. Woods was already a month behind and had incurred the additional fees, Mr. Woods ended up even further behind in his balance,

incurring another late fee. This continued month after month until Mr. Woods's account ended up over $1,000 behind in payments.

{¶26} The municipal court found that Carlyle never attempted to resubmit the April transfer even though it "controlled the amount that could be credited to [it] for HOA fees." The HOA has not challenged the court's findings. Even if it had, the finding that Carlyle controlled the amount it could withdraw from Mr. Woods's bank account is supported by the broad language of Mr. Woods's authorization and Mr. Schulman's testimony that, whenever the maintenance fee increased, Carlyle would begin withdrawing the higher amount from lot owners' accounts without seeking new authorization.

{¶27} Upon review of the record, the evidence supports the determination that the HOA failed to establish that it could not have recovered the full unpaid balance of Mr. Woods's maintenance fee account by May 2015. The municipal court, therefore, did not err when it awarded the HOA only one month of maintenance fees plus one late fee and one returned-check fee.

{¶28} Regarding the municipal court's failure to award attorney fees, the lead opinion correctly notes that, in *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, the Ohio Supreme Court explained that "[a]ttorney fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees[.]" *Id*. at ¶ 7. The fact that attorney fees "may be" awarded, however, does not make an award mandatory. *See Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102 (1971), paragraph one of the syllabus. The municipal court found that the reason that the late fees accumulated, "resulting in the involvement of [Carlyle's] legal representative[,]" was because Carlyle failed to resubmit the credit transfer for April 2015, "notwithstanding the fact that [it]

controlled the amount that could be credited to [it] for HOA fees." Again, the HOA has not challenged any of the trial court's factual findings. I, therefore, would conclude that the municipal court did not abuse its discretion when it declined to award the HOA attorney fees. I respectfully dissent.

APPEARANCES:

AMANDA A. BARRETO and LINDSEY A. WRUBEL, Attorneys at Law, for Appellant.

CHRISOPHTER G. WOODS, pro se, Appellee.